# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARIE LYNETTE AUSTIN** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:08CV260 LG-JMR** |
| | § | |
| **JOHN E. POTTER, Postmaster General,** | § | |
| **United States Postal Service** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER
## <u>GRANTING MOTION FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT is the Motion [3] to Dismiss, or in the Alternative, for Summary Judgment filed by the Defendant, the United States Postal Service. The Plaintiff has responded, and the Postal Service has replied. Because the Court found it necessary to rely on documents outside of the pleadings, the Motion was considered under the legal standard of Federal Rule of Civil Procedure 56. After due consideration of the submissions and the relevant law, it is the Court's opinion that there is no question of material fact for the jury. Accordingly, the Motion will be granted.

## DISCUSSION

Austin was employed by the Postal Service from 1995 until she was terminated in 2006. She alleges that after she was sexually assaulted by a co-worker on December 22, 2005, she was traumatized to the point that she was unable to talk about the incident. She requested time off on December 23 and 24, 2005, but the request was denied. Austin made another request on December 24 for time off after Christmas. This request was also denied. Austin did not return to work after December 24, 2005.

On January 3, 2006, Austin called the Postal Service Employee Assistance Program and was finally able to talk about the assault. She remains under the treatment of a clinical

psychologist and has never been medically released to return to work. Austin told her Union Steward, Gartska, about the assault on January 9, 2006. In turn, Gartska advised the Bay St. Louis Postmaster, who initiated an investigation into the assault.

Austin filed a sexual harassment complaint. The complaint was rejected as untimely. Austin was terminated from employment with the Postal Service on December 15, 2006 for being Absent Without Official Leave ("AWOL") and for failing to respond to proposed disciplinary actions. Thereafter, Austin filed a retaliation complaint, which was investigated but denied as untimely.

Austin's claims are made under Title VII for retaliation and hostile work environment, under 42 U.S.C. § 1983 for depriving her of a constitutionally-protected property interest in her position, under the Family Medical Leave Act, and under the Rehabilitation Act of 1973.

THE SUMMARY JUDGMENT MOTION AND EVIDENCE:

Austin's absence from work beginning December 27, 2005 provoked a response from the Post Office. On January 11, 2006, Postmaster Harrell sent a letter to Austin directing her "in the strongest terms possible," to report on January 17 for "an investigative interview in order to explain your situation and your intentions." Ct. R. 9-2 p. 1. He noted that "[e]xcept for making one call to the Attendance Control Center on December 26, 2005, you have had no contact with any Local Authority, nor have you provided any medical documentation to evidence your incapacity for duty." *Id.*

Austin did not appear for the investigative interview. Consequently, on January 20, Austin's supervisor Mary Klein requested that Austin be disciplined with a seven day suspension. Ct. R. 9-2 p. 5-7. Klein noted that Austin had "contacted her union representative

who called us to tell us that [Austin] was seeing a doctor to get documentation for her absence."
*Id*. at 5. Klein also notes:

> On 12/23/2005 the postmaster told employee that she would be AWOL if she failed to be at work on 12/27/2005. Supervisor Mary Klein held an official discussion on Saturday 12/24/2005 with employee and [sic] about her hostile attitude toward management and gave her direct instruction to report to work on Tuesday 12/27/2005.

Ct. R. 9-2 p. 6. Postmaster Harrell concurred with Klein's disciplinary request, *id*. at 7, and Austin was notified of the suspension by letter dated January 26, 2006. Ct. R. 9-2 p. 8-11.

A few days later, on January 30, 2006, Austin made a report to the Bay St. Louis Police Department regarding the December 22, 2005 sexual assault. Ct. R. 9-2 p. 12. She reported that another postal worker had come up behind her while she was reaching up high on a shelf and rubbed his lower body against her buttocks. *Id.* She told the detective that she would decide at a later date whether she wished to pursue a criminal charge of disturbing the peace against the co-worker. *Id*.

Around this same time period in late January 2006, Austin submitted a request for leave under the Family and Medical Leave Act. Ct. R. 9-2 p. 15-17. The Postal Service's FMLA Coordinator returned the medical certification form to Austin on February 2, 2006, as she could not make a determination of whether Austin's condition qualified as a serious health condition from the scant information provided by Austin's physician. *Id.* at 13-14. Austin was requested to resubmit the form with the required information. *Id.* Austin's second attempt to provide the required information was also determined to be inadequate. Ct. R. 9-3 p. 1. She was given another opportunity to cure the deficiencies, but did not respond. Her request for FMLA was then denied. *Id*. at 8. Later, on April 27, 2006, she submitted another medical certification form

completed by a different care provider, but was informed the same day that the Postal Service would not accept a second medical certification for the same time frame. *Id.*

The next day, April 28, 2006, Postmaster Harrell sent Austin a letter instructing her to "immediately return to duty or provide acceptable medical documentation or other acceptable evidence and/or reasons(s) to support your absences." *Id*. at 12. She was advised that her failure to do so "will result in you being charged Absent Without Official Leave (AWOL) and appropriate disciplinary action being imposed which may include your removal from the Postal Service." *Id.* at 12-13. Two months later, on July 27, 2006, Austin received disciplinary action in the form of a 14 day suspension from her Supervisor, Mary Klein, and the new Postmaster, Joey Cain. *Id*. at 16-17.

Represented by attorney Albert Necaise, Austin made her initial sexual harassment EEO complaint on July 31, 2006. Ct. R. 3-2. In a letter to Austin dated August 25, 2006, the EEO Dispute Resolution Specialist advised:

> Inquiries have been made into the allegations of discrimination you filed with this office. This notice will attest to the fact that on date of receipt (per this letter) you were advised that no resolution could be reached concerning the allegation(s). **Management states that an investigation was done into the allegations and further action has not been deemed necessary. Management also states that the allegation of sexual harassment was not substantiated and appeared to be a result of actions being taken against you and your employment status. . . . You are also familiar with the time limits for filing a complaint, having filed other complaints in 2001 and 2003. The time limits have not changed and remain at forty-five (45) days from the date of incident. You notified the EEO Office on July 31, 2006 and your date of incident is December 22, 2005.**

Ct. R. 3-2 p. 2 (emphasis in original). Austin was also advised that she had the right to file a formal complaint and instructed on the proper method for doing so. *Id*.

On August 30, 2006, Austin was notified that she would be removed from the U.S. Postal

Service effective October 6, 2006. Ct. R. 9-4 p. 1. The stated reasons for her termination were being absent without official leave ("You have failed to submit acceptable medical documentation and/or other acceptable evidence and/or reason(s) to support your absences") and failing to follow instructions ("You failed to report to the Postmaster Office as instructed. Furthermore, you did not telephone the Postmaster to inform him of your inability to report as instructed."). This notification was signed by Austin's Supervisor, Mary Klein, and Postmaster Joey Cain. *Id*. at 2. It was sent by certified mail on August 30, 2006 and signed for by Austin the next day. *Id.* at 3.

Austin filed a formal EEO sexual harassment complaint on September 12, 2006. The complaint was dismissed as untimely:

> You have provided no evidence that you were not aware of the time limit for contacting an EEO Counselor. . . . Therefore your complaint alleging discrimination as cited above is now dismissed as untimely brought to the attention of an EEO Counselor in accordance with 29 C.F.R. 1614.107(a)(2).

Ct. R. 3-2 p. 7. There was no analysis of the merits of the claim. Austin was advised of her options to appeal or file suit. *Id*.

Austin submitted another EEO complaint, charging retaliation, dated June 7, 2007. Ct. R. 6-4 p. 11. She was represented by new counsel, Kaye Persons, in this proceeding. She alleged that her termination was "in retaliation for my reporting the sexual assault and for filing an EEO complaint about it." *Id*. She also alleged that she did not discover she had been terminated until March 1, 2007. *Id*. The retaliation claim was dismissed as untimely. Ct. R. 3-3 p. 3. The Postal Service EEO found that although Austin alleged she was terminated on March 1, 2007, the evidence showed that she had received notification on August 31, 2006 that she was being

terminated effective October 6, 2006. *Id*. at 1-2.

Even though it was untimely, Austin's retaliation complaint had been investigated, and so the Final Agency Decision included a ruling on the merits. The Agency first found that Austin had failed to meet the second and fourth elements of a prima facie retaliation claim because she had not shown that the agency officials were aware of her protected activity, and she did not establish a causal connection between the protected activity and her termination. *Id*. at 10-11. The Agency then found that, even if Austin had established a prima facie case of retaliation, she had produced no evidence that the Postal Service's legitimate, nondiscriminatory reason for terminating her was a pretext for retaliation. *Id*. at 14. The case was closed with a finding of no discrimination. *Id.* Austin again was advised of her options to appeal or file suit.

TITLE VII TIME LIMITATIONS:

It is well settled that a federal employee may sue her employer under Title VII only after she has exhausted her administrative remedies. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *Fitzgerald v. United States Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997); *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992). The Fifth Circuit has often stated that a federal employee's pursuit of appropriate administrative procedures is a jurisdictional prerequisite to filing a civil action. *See, e.g., Sanders v. Reno*, 186 F.3d 684, 685 (5th Cir. 1999); *Randel v. United States Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998); *Barnes v. Levitt*, 118 F.3d 404, 409 (5th Cir. 1997); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995). Federal employees "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the actions." 29 C.F.R. § 1614.105(a)(1). The 45-day limitation period begins

to run from the time the discriminatory event or personnel action occurs, not when the plaintiff discovers or can prove that a discriminatory intent motivated the action. *Pacheco*, 966 F.2d at 906. The regulations provide for an extension of the 45-day period under certain circumstances.[1] Failure to initiate contact within the required period will bar subsequent review of the claim in federal court, absent waiver, estoppel or equitable tolling and it is the employee's burden to establish these exceptions. *See id.* at 905. If the employee fails to do so, her claim is barred. *See Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2002); *Pacheco*, 966 F.2d at 905.

### a. Sexual Harassment Complaint

Austin alleges she was sexually harassed on December 22, 2005, but did not notify the EEO Office of her allegations until July 31, 2006. This is well beyond the 45 days prescribed by 29 C.F.R. § 1614.105(a)(1). Austin acknowledges the untimeliness of her complaint, but argues that her supervisors' indifference to her plight and their efforts to discipline and terminate her are all evidence of a hostile working environment. Thus, she contends that these "continuing violations" occurring within 45 days of her complaint are reviewable. However, employer actions such as continuing to list a postal employee as AWOL are not "continuing violations." *Henrickson v. Potter*, 327 F.3d 444, 448 (5th Cir. 2003). Furthermore, these employer actions

---

[1] 29 C.F.R. § 1614.105(a)(2) provides:

The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

are not evidence of a hostile working environment, as none has a sexual harassment component that would contribute to her sexual harassment claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."). The Court therefore finds no basis for excusing the untimely filing of Austin's EEO sexual harassment complaint. Review of the claim in federal court is barred.

### b. Retaliation Complaint

Austin made a charge of retaliation on March 1, 2007 for her termination. She alleged she learned on that date that she had been terminated on December 15, 2006. In support of this allegation, she attached a "Notification of Personnel Action" form which documents the particulars of Austin's term of employment with the Postal Service. Austin alleges that this form, having a "processed date" of February 21, 2007, was one of the "inconsistent, purported notifications of removal" she received. Ct. R. 7 p. 10. In the affidavit attached to her retaliation charge, she describes receiving "the latest termination letter on March 1, 2007." Ct. R. 6-5 p. 5. However, she also alleges she received the formal notice of her October 6, 2006 termination by certified mail on August 31, 2006. Ct. R. 7 p. 10. The Court therefore finds no question of material fact regarding the date of Austin's termination. "The operative date from which the . . . filing period begins to run is 'the date of note of termination, rather than the final date of employment.'" *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir. 1988) (quoting *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 563 (5th Cir. 1983)). Here, that day was August 31, 2006, when Austin received written notice of her termination. *See Del. State Coll. v. Ricks*, 449

U.S. 250, 258 (1980); *Resistoflex Co.*, 854 F.2d at 765 ("Determination of when notice has been communicated to an employee is based upon an objective standard, focusing upon when the employee knew, or reasonably should have known, that the adverse employment decision had been made."). As Austin initiated her retaliation claim on March 1, 2007 - well beyond the 45 day filing period beginning August 31, 2006 - the claim is untimely. This Court therefore lacks subject matter jurisdiction to consider Austin's retaliation claim.

T<span>ITLE</span> 42 U.S.C. § 1983:

Austin alleges a claim against the Postal Service under 42 U.S.C. § 1983 for depriving her of a constitutionally-protected property interest in her position. The Postal Service seeks dismissal of this claim, contending that the Court does not have subject-matter jurisdiction because the Postal Service is a part of the federal government and does not act under color of state law, nor can it be considered a "person" for purposes of § 1983. *Resident Council of Allen Parkway Vill. v. United States Dep't. of Hous. & Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993); *Duncan v. Goedeke & Cleasey*, 837 F. Supp. 846, 849 (S.D.Tex. 1993) (citing *Zernial v. United States*, 714 F.2d 431, 435 (5th Cir. 1983)). After review of the case law, and on the record before the Court, the Court concludes that it lacks subject matter jurisdiction of this § 1983 claim against the Postal Service.

Even if the Court liberally construes Plaintiff's § 1983 claim to be one brought under the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), such a claim cannot be maintained against a federal agency such as the United States Postal Service. *FDIC v. Meyer*, 510 U.S. 471, 485 (1994); *Govea v. ATF*, 207 Fed. Appx 369, 373 (5th Cir. 2006). It will therefore be dismissed.

THE FAMILY MEDICAL LEAVE ACT:

Austin asserts that the Postal Service terminated her because of her "FMLA-qualifying absences from work." Ct. R. 1 p. 8. Under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*., employers have a prescriptive obligation - they must grant employees substantive rights guaranteed by the FMLA - and they have a proscriptive obligation - they may not penalize employees for exercising these rights. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001). Plaintiff's claim implicates both, in that she contends that the Postal Service should have granted her FMLA leave but did not, and when she was absent anyway, she was discriminated or retaliated against for having exercised her right to FMLA leave. Austin is not required to establish a violation of the substantive, prescriptive provisions of the FMLA to allege a violation of the proscriptive provisions. *Id.*

    a. FMLA Prescriptive Rights

To present a claim under the FMLA's prescriptive provision, a plaintiff must show that (1) she is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which, under the FMLA, she was entitled. The contested element of Austin's claim is whether she was entitled to FMLA leave.

The FMLA entitles eligible employees "to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "Serious health condition" has been defined as either inpatient care or three consecutive days of incapacity

followed by continuing treatment by a health care provider. 29 C.F.R. § 825.114(a).

In addition to allowing leave for ill employees, the FMLA also protects the employer by providing that "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). Such a medical certification will be considered sufficient if it contains certain information, including: (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; and (4) if the leave is for the employee's own serious health condition, a statement that the employee is unable to perform the functions of his or her job. *Id.* § 2613(b); *Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574, 582 (5th Cir. 2006). The failure to provide an appropriate medical certification or recertification is fatal to a claim under the FMLA. *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 332 (5th Cir. 1998); *see also Kinchelow v. Robinson Prop. Group*, 1998 WL 180316 at *2 (N.D. Miss. Mar. 27, 1998).

Austin's first medical certification form was deemed incomplete by the FMLA Coordinator. The only information provided by Austin's health care provider, an internal medicine doctor, was that she had a category 2 serious health condition;[2] the medical facts

---

[2] Category 2:
Absence plus treatment - a period of incapacity of more than 3 consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition) that also involves either one of the following:
    a) Treatment two or more times by a health care provider.
    b) Treatment by a health care provider on at least one occasion that results in a regimen of continuing treatment under the supervision of the health care provider . . . .
Ct.R. 6-4 p. 7.

supporting this were "situational anxiety, sleep disorder, related to incident at work;" beginning "12/22/20" and lasting "several months." Ct. R. 9-2 p. 15. As this information was clearly insufficient under the statute, the form was returned to Austin with instructions to have her doctor provide answers to certain, specified questions within 15 days. Ct. R. 9-2 p. 13. After receiving the form from Austin again,[3] the FMLA Coordinator noted that all deficiencies had not been corrected. Ct. R. 9-3 p. 1. In particular, she noted:

> Your health care provider marked #2, which is Absence Plus Treatment. Therefore, your health care provider indicates that your serious health condition requires additional clarification to meet FMLA requirements. Under #2 - Absence Plus Treatment, your health care provider must give the date(s) of incapacity due to this condition - which is a one-time absence plus treatment. If your health care provider perceives this condition to be on an ongoing basis or episodic, please see the attached letter regarding chronic conditions. **No diagnosis of the condition is required**. Your health care provider must complete all questions. If these questions do not apply, he *must* indicate by putting "N/A".

*Id*.

It appears that the FMLA Coordinator was referring to the lack of information about whether Austin was presently incapacitated and her required treatments. The doctor responded to the question about whether she was incapacitated and the duration of her incapacity by saying "Patient reports she is presently unable to work. ? Duration." *Id*. at 2. It was "unknown" whether Austin would require additional treatments. *Id*. at 3. The doctor's "estimate of the probable number of and interval between such treatments" was "?." *Id*. In response to the question of whether Austin was unable to perform work of any kind, the doctor stated "patient reports that she is unable to perform work of any kind at former workplace." *Id.*

---

[3] Austin apparently mailed the more complete form to the FMLA Coordinator on time, but it did not arrive. Informed of this, Ct. R. 9-2 p. 18, Austin was able to show that she had complied with the instructions, and the medical certification form was reviewed again.

In order to show that she was "required" to miss work for more than three days, Austin must show that she was prevented from working *because of* the injury or illness based on a medical provider's assessment of the claimed condition. It does not mean that, in Austin's own judgment, she could not have worked. Rather, it means that a "health care provider" made a professional assessment of her condition and determined that she could not have worked *because of* the illness. *Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1166 (N.D. Ohio 1997) (citing *Seidle v. Provident Mut. Life Ins. Co.*, 871 F. Supp. 238, 244 (E.D. Pa. 1994)). "If it were otherwise, a note from a spouse, parent, or even one's own claim that one cannot work because of illness would suffice. Given the legislative history surrounding its enactment, the FMLA cannot be understood to establish such liberal standards for its application." *Olsen*, 979 F. Supp. at 1166. Clearly, Austin's doctor's statements consisting only of what she told him are not a statement of his own medical judgment based on his assessment of her condition.

Having been notified that this second attempt was also inadequate, Austin was given another period of time to cure the deficiencies. She did not comply, and her request for FMLA leave was denied sometime after April 17, 2006. On April 27, 2006, the FMLA Coordinator received a medical certification form from another health care provider - a clinical psychologist. Ct. R. 9-3 p. 9-11. According to this provider, Austin's serious health condition category on April 12, 2006 was "4" and she was "unable to perform any work related duties at present and for the foreseeable future." *Id*. at 10. The FMLA Coordinator advised Austin that "in light of the [earlier deficient certification attempt], we are unable to accept a second medical certification for the same timeframe." Ct. R. 9-3 p. 8.

Austin's failure to provide an appropriate medical certification is fatal to her FMLA

claim. *Boyd*, 158 F.3d at 332. But even if her medical certification showed she qualified for FMLA leave, the Court notes that twelve weeks from December 24, 2005 is March 18, 2006. On and after March 18, 2006, Austin was still seeking leave, and her health care providers asserted she was unable to return to work. Thus, at the time her maximum period of FMLA leave would have expired, Austin was unable to return to work. An employee who is unable to return to work in twelve weeks has no remedy under the FMLA even if the employer committed a violation of the Act. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784-85 (6th Cir. 1998); *Katekovich v. Team Rent A Car of Pittsburgh, Inc.*, 36 Fed. Appx. 688, 690 (3d Cir. 2002). The Court therefore finds that the Defendant is entitled to judgment as a matter of law as to Austin's prescriptive FMLA rights claim.

### b. FMLA Retaliation

In order to establish a prima facie case of retaliation under the FMLA, the employee must show the following: 1) she was protected under the FMLA; 2) she suffered an adverse employment action; and 3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Mauder*, 446 F.3d at 583 (citing *Hunt*, 277 F.3d at 768). Once the complaining party establishes a prima facie case, the burden shifts to the defendant to prove that the plaintiff would have been terminated during the FMLA leave period and is therefore not entitled to restoration of her position. 29 C.F.R. § 825.216(a). Thereafter, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation. *Mauder*, 446 F.3d at 583 (citing *Hunt*, 277 F.3d at 768)).

When evaluating whether the adverse employment action was causally related to the

FMLA protection, the court shall consider the "temporal proximity" between the FMLA leave, and the termination. *Mauder*, 446 F.3d at 583 (citing *Wilson v. Lemington Home for the Aged*, 159 F. Supp. 2d 186, 195-96 (W.D. Pa. 2001)). Moreover, the plaintiff does not have to show that the protected activity is the only cause of her termination. *Mauder*, 446 F.3d at 583 (citing *Long v. Eastfield Coll.*, 88 F.3d 300 n.4 (5th Cir. 1996)). The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated. *Mauder*, 446 F.3d at 583 (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

As discussed above, Austin has not shown that she had a serious health condition entitling her to protection under the FMLA. However, assuming Austin could establish this and the remaining elements of a prima facie case of FMLA retaliation, she does not provide any evidence that the Postal Service's reasons for disciplining and terminating her were pretext for retaliation. The Postal Service's stated reason for its actions was Austin's continuous unexcused absence from work. This is a legitimate, nonretaliatory reason and shifts the burden to Austin to show that it was pretext to retaliate against her for exercising her right to FMLA leave. *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 335 (5th Cir. 2005).

To show pretext, Austin relies on the temporal proximity of her request for leave and the Postal Service's action.

> Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation. However, once the employer offers a legitimate, nondiscrimnatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.

*Woodson v. Scott & White Mem'l Hosp.*, 255 Fed. Appx. 17, 18 (5th Cir. 2007) (quoting *McCoy*

*v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007)).  The Postal Service began its disciplinary actions against Austin before she requested FMLA leave - she had already failed to appear for a mandatory investigative interview and received a seven-day suspension by the time she submitted her leave request.  These actions could not have been retaliatory.  She did not receive the second, 14-day, suspension until she had been absent from work for six months after making her initial FMLA request.  And she was notified of her termination after being absent from work seven months after her request.  In order to be persuasive evidence, temporal proximity must be "very close."  *Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (Three and a half month time span, standing alone, insufficient to show retaliation); *See also Stroud v. BMC Software, Inc.*, 2008 WL 2325639, *6 (5th Cir. June 6, 2008).  The six month expanse of time between Austin's request for FMLA leave and the disciplinary action by the Postal Service, without more, does not support her retaliation claim.  The evidence shows that Austin was disciplined and terminated because she did not comply with her supervisors' direct orders, and did not report to work.  The fact that she requested FMLA leave does not exempt her from the consequences flowing from her violation of the Postal Service's work rules.  *Hoogstra v. West Asset Mgmt., Inc.*, 560 F. Supp. 2d 515, 524 (E.D. Tex. 2006).  "Precedent does not prevent [an employer] from removing such an employee simply because the employee engaged in protected work activity months prior."  *Strong*, 482 F.3d at 808.  A reasonable juror could not conclude that Austin was terminated because of her request for FMLA leave.  The Postal Service is entitled to judgment as a matter of law on this claim.

THE REHABILITATION ACT OF 1973:

Austin alleges that the Postal Service's "acts and omissions were based upon unlawful

discrimination in that . . . [the Postal Service's] regard for her as impaired/disabled was the sole or a motivating factor." Ct. R. 1 p. 9. Thus, Austin alleges that the Postal Service took increasingly serious disciplinary actions against her not because she failed to report to work for eight months, but because it regarded her as impaired or disabled.

The Rehabilitation Act provides protection from discrimination based on disability to employees of the federal government, federal agencies, and programs receiving federal funds. The statute further prohibits employer retaliation against employees who engage in protected activities, such as opposing practices made unlawful by the Rehabilitation Act or participating in administrative proceedings under the Rehabilitation Act. *See* 29 C.F.R. § 1614.101(b); *Shannon v. Henderson*, No. 01-10346, 2001 WL 1223633, *3 (5th Cir. Sept. 25, 2001). To further its aims, the statute also authorizes private enforcement causes of action in federal district courts. *See* 29 U.S.C. § 794a(a)(2); *Barnes v. Gorman*, 536 U.S. 181, 185 (2002).

The Rehabilitation Act adopts by reference the enforcement scheme and administrative remedies established for federal employees in Title VII cases. *See* 29 U.S.C. § 794a; *see also Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981). Federal employees who allege discrimination prohibited by Title VII are required to first contact an EEO counselor within 45 days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a).

Austin has no viable claims under the Rehabilitation Act, because she failed to contact the EEO counselor within 45 days of any alleged discriminatory act. In determining when the 45 day EEO notification period begins, "the focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Henrickson*, 327 F.3d at 448 (quoting *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998)). Beginning in late December

2005, Austin refused to report for work. As a result, the Postal Service notified her that she was listed as AWOL beginning on January 7, 2006. Ct. R. 9-2 p. 1. The initial listing of Austin on AWOL status should have alerted her to act to protect her rights. *Henrickson*, 327 F.3d at 448. Therefore, Austin had 45 days from the initial AWOL listing on January 7, 2006, to contact an EEO counselor. Because she did not contact an EEO counselor until July 31, 2006, Austin did not exhaust her administrative remedies, and this Court therefore lacks subject matter jurisdiction to consider this claim. *See Prewitt*, 662 F.2d at 303; *Linthecome v. O'Neill*, 266 F. Supp. 2d 514, 517-18 (N.D. Tex. 2001).

Even if the Court had jurisdiction to adjudicate this claim, Austin's eight month absence would entitle the Postal Service to judgment as a matter of law. Reporting to work regularly is an essential function of any job; thus, Austin's complete absence from her workplace prevents her from asserting a Rehabilitation Act claim. *See* 29 C.F.R. § 1614.203(a)(6) (qualified individual must be able to perform essential functions of the position); *see also Ceasar v. United Serv. Auto. Ass'n*, 102 Fed. Appx. 859, 860 (5th Cir. 2004).

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [3] to Dismiss or in the Alternative, for Summary Judgment filed by the United States Postal Service is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 3rd day of February, 2009.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE